Thank you, Your Honor. May it please the Court, Counsel. I'm Matthew Rosenberg. I'm representing Movement Appellant SI03 in this case. Counsel, let me ask you one question of the status of this case. There is some evidence that the Chicago-based proceeding has been terminated. Apparently, when you look at the PACER record, it'll say, Case Closed. On the other hand, when you look at the docket itself, I get the impression that the district judge regards this as being held in abeyance, subject to 60 days for discovery, with the right to amend. So can you help us figure out, is this a live case or not? I believe it is. Well, okay, but why? What it shows on PACER, I think, is something that the clerk flagged. The clerk has it flagged as closed, but there's no pleading, there's no order. There's a dismissal of the complaint, which, of course, does not dismiss the action, but... Correct. And the judge said you have the right to proceed with, quote-unquote, expedited discovery, even though this got tied up within 60 days, or almost immediately. The plaintiff filed a non-party subpoena on the appellee in this case, issuing out of the District of Idaho, pursuant to Rule 45. That was done immediately, but then there was the fight over... So, as far as you're concerned, the underlying case is still pending in the Northern District of Illinois? Absolutely. All right. Very well. The appellee actually raised an issue in his brief as to the proper standard of review of the district judge on the magistrate's order. We did not think that that was an issue originally, but apparently it is, so I would like to discuss it. 28 U.S.C. 636, 1A, enumerates eight particular types of motions on which magistrates have no jurisdiction to issue that on those eight types of motions, a district judge may refer to the magistrate the motion for a report of findings and recommendations. And then 28 U.S.C. 636, 1C, says that on those simple reports of recommendations, a district judge reviews that de novo. But if it's actually a motion which the magistrate has jurisdiction under 1A... As in the motion to compel here? As in the motion to compel here, it's reviewed for clear error. So, the appellee would like to say, well, this was a dispositive motion. But Section 1A doesn't say dispositive motion. It specifically enumerates eight motions that are out of his jurisdiction. And, in fact, in this case, the magistrate did not issue a report, recommendation of findings. The magistrate actually issued an order. And the district... Wasn't that order, though, appealed to the district court? It was, under Section 1A. You can still make objections, but then the district court, the order for clear error. Or, yeah, I believe... Does that encompass legal conclusion? Yes. I mean, the statute doesn't differentiate. The statute says that, you know, anybody... Clear error on the law? Is that what you're saying? Well, no. You know... Clear error on the facts, maybe? The statute doesn't say. But, yes, I mean, an appellate court would review a district court's, you know, statements of the law de novo. And, certainly, I'm not suggesting that a district judge wouldn't be doing the same. But, nonetheless, you know, these were... There were fact findings made by the magistrate that at least four... And, remember, we started out with 40 pseudonymous posters in the subpoena. And the district... The magistrate actually went on to seven and then whittled it down to four and said, you know, these four out of the 40 are actionable and were the disclosure. I don't know that the magistrate judge made any factual findings. He had to first determine what the applicable legal test was going to be and then look at what was presented to him and then apply the legal test that he thought should apply here and drew a conclusion from that. Well, using Cahill, he applied the summary judgment. Right. And in summary judgment, you don't make findings. All you do is you take an assessment of the evidence. You draw conclusions, you know, to the opposing party. Well, in summary judgment, you have to view the facts in the light most favorable to... The non-moving party. ...the non-movement. Right. Well, in this case, the non-movement is actually the movement SI03 because it's being viewed for a hypothetical summary judgment by the pseudonymous posters against plaintiff. Well, I take it your argument is that the standard applied was too restrictive? Well, the... Yeah, the standard... By the district judge. To the extent that the district judge used this second dendrite balancing test after he's already... Right. You know, you first look to see whether or not it's actionable. And that's the Cahill standard. But very recently in Ray Anonymous Online Speakers, this court just this summer said of a very, very similar case. In that case, there was a company, QuickStar... Right. ...who sought, sued pseudonymous posters alleging that they were in a conspiracy or a smear campaign with one of its competitors. That's exactly what was alleged in the Illinois complaint here. So, you know, this is commercial speech. If in Ray Anonymous Online Speakers is commercial speech, then this case also deals with commercial speech. How do we know that? Just because you say that this was a smear campaign? Well, that's something that was never addressed by the magistrate or the district court. I mean, that's what's alleged in the complaint. And the complaint is part of the record. It's in the excerpts of the record, the Illinois complaint. And along with the posters, the companies that are alleged as John Doe companies are also named defendants. Do we know if these posters, though, are associated with the companies? With the competitors? We don't know that. And I think that's what's alleged in the complaint. And I think it's based on the timing of the post with other posts and the fact that this is now exceeding what's actually within the four corners of the record. But these posters originally did not have to identify themselves as being representative of companies in the industry by the forum rules. And then the forum rules later changed. I believe there is some evidence that at least some of them may be associated with the companies. But that's something that's never been addressed by the Illinois court or the Idaho court or any of the briefing in this case. Looking at it from polar ends of the spectrum, if some of these posters were ideological, politically oriented people who had no commercial interest whatsoever, that might be closer to the First Amendment protections. Whereas if they were, in fact, agents of some competitor, then we'd be closer to the commercial side. Is that, am I stating your understanding? Not necessarily. I don't know that that's necessarily true. I mean, as far as I can in the QuickStart case, there's no evidence beyond what was in the complaint, allegations that these parties were in cahoots with a competitor. But in Ray Anonymous Online Speakers, it actually talks about the different types of speech and the different levels they're protected. In addition to commercial, there's political, religious, and there's one other that's escaping me right now. But there were four types of speech. And this certainly doesn't fall into any of the other three. This was an online board dedicated to helping people choose the right product. There's no way that this was political or religious speech. This was trying to steer people towards purchasing one product over another. These people did not... Well, somebody could have a crusade against bodybuilding chemicals, steroids, or whatever, not necessarily aimed at a particular provider. Where does that fit? I think that would still be commercial speech. Unless they state that this is for political reasons, SI03 does business with China, who has a poor human rights record, and you shouldn't buy from them for that reason. Well, that would be more political. Well then, what do we know about Chimpliclo, CXM, El Mariachi, and Ingenium? What do we know about those four? At this point, we know very little about them, except that... Well, you know their statements. Yes, and their statements are all that the SI03's products have killed people, or in one case, I don't remember which one it was, it put them in the hospital. And these are factual statements. That's what the magistrate found, and what I think is plain and clear that these are not opinionated statements. And in fact, similar statements made, there's sort of a companion case pending in the District of Idaho right now in front of Judge Windmill, and it's not directly related to this case, it's actually SI03 versus Bodybuilding.com, who's the appellee in this case. And the district judge in that case also found that these types of statements saying the product kills people, that's a factual statement. That's something that is per se defamatory. So, I don't think, this is not political speech, if they said SI03, its owner is Buddhist, and we don't like Buddhists, that would be possibly religious speech, but this is simply, the product kills people, don't buy it. Go ahead. So, your assertion then is that you're alleging that one or more of these people have a commercial interest, and you are entitled to compel discovery to establish whether that's true or not. Is that essentially what you are? That's the allegation, yes, Your Honor. Very quickly, I wanted to... I'd appreciate your... Do you disagree with the standard that they applied, taking the Cahill standard? I think the Cahill standard, you know, in the Quick Start, in Ray Anonymous Online Speakers, this court said the Cahill standard was too high. Because it was actually the John Does that were filing a petition for writ of mandamus, because the court said, well, there's certainly no error in the district court using the higher standard, but we think Cahill's too high. You know, I think if you follow that case, you have to choose one of the lower standards. And the court didn't specify whether... Didn't say whether it would use the good faith standard or the motion to dismiss standard, but it did say Cahill was the strictest of the strictest, which is, you know, obviously, Dendrite is even stricter, which is what the district judge tried to use. But I think Cahill is... Okay. I think if you use the Cahill standard appropriately, I think you have to reverse and remand, or at least remand in this case. One thing I want to talk about, Doe versus Reed, which was also a Supreme Court opinion that came out just this summer. It was an eight-to-one decision. There were six different concurring opinions every justice had to write. And all the justices that were concurring all said, yes, the disclosure in that case violates the First Amendment. That's actually a case that came out of the state on the Public Records Act. But they all said, you know, a disclosure of this type doesn't prohibit speech. It's simply a disclosure. It may burden the... And this is a quote, the PRA is not a prohibition on speech but a disclosure requirement that may burden the ability to speak but does not prevent anyone from speaking, which addresses one of the issues brought up by Apelli. And the other, very quickly, Apelli said, well, you know, there's a problem with these types of cases that the anonymous speakers can't come forward. But in most of the cases, Doe versus Reed, Doe versus ToTheMark.com, Lefkoe versus Joseph A. Bank, Mobilisa versus Doe, all these cases, the John Doe's appeared in court through counsel. And, in fact, Ingenium, in this case, appeared pro se in the district court. So that's not true at all. And I'd like to reserve what little time I have left. All right. Very well, counsel. We'll hear from the Apelli. Mr. Weber? Thank you, Your Honors. Good morning. Good morning, counsel. May it please the Court. Michael Weber on behalf of the ApelliBodyBuilding.com. Do you agree that this is still a live proceeding? It's based in... My understanding, and I have no reason to disagree. All right. Your Honor, let me first address briefly the standard of review. We raised the standard of review in our brief because of an appellant's assertion that Judge Lodge did not give enough deference to the order of Magistrate Judge Boyle in this case. And the standard of review is abuse of discretion.  So the question that is raised is whether or not Judge Lodge owed any deference to Magistrate Judge Boyle or could simply review his order de novo. And 28 U.S.C. 636b1a talks about basic run-of-the-mill discovery orders that are typically referred to magistrates, and they take care of them. And that's the scheme. That's the way things are intended. And for those, I think primarily to save time and work on the part of the district court, they review them for clear error, and if they look fine, then off they go. That paradigm changes under 28 U.S.C. 636b1b and b1c if your basic run-of-the-mill discovery order is dispositive, as it has been found by this Court, where you're talking about a discovery order in a collateral proceeding like we have here. The main action is in Illinois. This is a collateral proceeding in the Southern District of Idaho. And appellants admitted it in their brief. If this order is dispositive, that takes it out of the clear error review and gives the district judge de novo review. And so that was the appropriate standard for Judge Lodge to use. I'd like to talk a little bit about commercial speech. In re anonymous online speakers is an interesting case, and central to that court's determination of what the appropriate standard was, was its finding that the speech at issue was commercial in nature. And that finding is both, I think, perplexing, with all due respect, and troubling. And to explain why I think that, I'd like to read to you two statements directly from that opinion. The court said the statements at issue, quote, are best described as types of expression related solely to the economic interest of the speaker and its audience, and are thus properly categorized as commercial speech. And it cited the Supreme Court's decision in Central Hudson. Then this court went on to say, the claim disparagement goes to the heart of plaintiff's commercial practices and its business operations. I'll take each of those statements in turn. The first one is perplexing, because how does a court determine whether a statement was made solely to promote the economic interest of the speaker, if it doesn't know who the speaker is? But isn't that the case, then, to grant the motion to compel, so we can find out who these speakers really are? It's actually the opposite. Why? Because it's a simple thing, then, and it's akin to what the Northern District of California said in the Highfields case. It allows the plaintiff to invade a First Amendment right,  merely because the plaintiff has pled and prayed. And that is far too low a standard to protect a First Amendment right. Well, they allege that they're agents of a competitor, and they've certainly put on the record what was actually said, which was pretty dramatic. Your Honor. Isn't that enough to at least allow discovery? Quite honestly, I don't know how this court arrived at the conclusion it did in anonymous speakers. I have no idea. I've looked at the record in that case. There are 400-and-some-odd docket entries in the trial court. I haven't been through them all. What I do know is that the record in this case makes this case readily distinguishable. Here's why. In Magistrate Judge Boyle's original order, his very first order of business was to eliminate from his analysis every single one of the 22 anonymous posters whose identity appellants want, every single one who, based on appellants' own allegations, was affiliated or associated with a competitor. He took them right off the table. He took them right out of the equation. Well, and what about these five or four that are left? The ones that are left, according to the record, according to the evidence that was presented to the court, according to Judge Boyle's findings, which Judge Lodge then accepted on this basis, the only people who are left are not affiliated with anyone. But how do we know that? You don't. Well, then how can you make the statement? The point is, Your Honor, is that there has to be, in every single case that is taken on this issue, there has to be some threshold shown by the plaintiffs that they can make out their prima facie case, okay, that whether it's withstand a motion for summary judgment, whether it's withstand a motion to dismiss, whether it's come forward with actual proof of all the elements of your case, there's always some threshold. Now, if the court is going to say, well, if the plaintiff says it, we're done. If the plaintiff says it, we're done. Because nothing else can be known except what the plaintiff said. We're not going to judgment here. All we're talking about is discovery. Isn't that right? We're talking about discovery that invades a First Amendment right. And as many of the courts have noticed who have dealt with this issue, once that right is gone, it's gone. There's no giving it back. There is no giving it back. You can't unmean. You can bring up John Doe cases of plaintiff and not disclose who you are? From time to time that has occurred. But you have to show some tremendous reason, some huge privacy interest in doing so. And, in fact, there have been cases where there have been John Doe plaintiffs. And usually they involve questions of intimate nature and things like that where we're exposing the identity of the plaintiff would create further harm than good. There have also been cases, and there was an interesting one, one of the cases that we cited in our brief, in re-subpoena Deuces-Tegum to America Online. This came out of Virginia Circuit Court. That case was reversed on appeal because the plaintiff in that case wanted to proceed anonymously. And the Virginia Appellate Court said, I don't think so. And so they didn't let that happen. But it does happen from time to time. But, Your Honor, all I'm suggesting here is that if all you have are the allegations and the speculation of the plaintiff, then you have no protection at all for the very recognized and very important First Amendment right to speak anonymously. Why couldn't the district court judge enter some protective orders? I'm sorry, Your Honor? Protective orders. To accomplish what? Well, for example, he could see the disclosure could just be to the district court. The identities would still be known. How is that? If the disclosure were made, it's made. Yeah, but it's made only to the judge. Oh, I understand. If it were only disclosed in camera? Yes. I'm trying to figure what purpose that would accomplish. What we're concerned about, obviously, is the true agent of the competitor masking under First Amendment protections. I understand that completely, Your Honor. I don't get it, then. That is a concern. And I think the court in this case did its level best to get at that. It took all the information that was provided by plaintiff. It took all of that information and said, okay, here are the ones that according to you, the plaintiff, the appellant, according to you, here are the ones who are affiliated and associated with competitors. We're going to treat them separately. And what we have left are the ones that are not. Just for my information, what did the court do with respect to that group? What it suggested was that the plaintiff either sued the competitors directly, since it knew of the affiliation or at least had a good faith basis for alleging it, or that it at least didn't discover it directly from those competitors, as opposed to a non-party witness like BodyBuilding.com who merely hosts the forum. And was there any further discovery beyond that? I don't know what plaintiffs may have done, but that was basically their marching orders. But based on what the plaintiffs presented and the findings of the court, what counsel said I think is factually inaccurate. The remaining anonymous speakers in this case, there's no allegation. There's no suggestion. There's no evidence. There's no anything linking them with competitors or to commercial speech. And I would suggest to this Court that ---- The other case, anonymous, the other case, our other Ninth Circuit case, it didn't deal with defamation claims, I don't think. It did, with trade disparagement. It did? Yes. It was a case between QuickStar, who was the successor to Amway, and another company called Signature Management Team, which is basically comprised of a bunch of disgruntled former Amway people. And Team posted websites and blobs and so on and so forth where people came on and said really bad things about Amway. And the allegation was made in that case. And again, I don't know how this Court reached its conclusion as to the motives of the speaker, but the allegation was made that the people who were posting were a lot of the former Amway folks who were now in competition with Amway with their new business and wanted to steal business and representatives and so on and so forth. One of the things the magistrate judge did here and the district court agreed in a couple of instances was that the statements were defamatory per se. Correct. Correct. And, Your Honor, if you read through the opinions, you'll find, and this was the same sort of conclusion that was reached in the Dendrite Court, the New Jersey decision that does threshold plus balancing that most courts have followed up to now. If you look at that, what that calls for the court to do is to conclude that it can't say as a matter of law that it's not defamatory. That's all it takes. So even if it's a close call, even if it's a close call, could be a statement of opinion, could be a statement of fact, but I can't say as a matter of law that it's not defamatory, so I'm going to let it go to the jury. I'm going to let it go to the jury. It doesn't mean the court has concluded that they are defamatory. It just can't rule out that they're not. And, again, that's a very, very low threshold when on the other side of the equation is something as important as First Amendment rights to free speech, including the right to speak anonymously. Well, you don't have a right to defame anybody. Of course you do not have the right to defame anybody. I take that back. One of the things that the Supreme Court has taught us, you find this in New York Times versus Sullivan, is that the contours of the First Amendment are not delimited or defined by state defamation laws. That's the tail wagging the dog. It's the other way around. What the court said in New York Times is that there is no talismanic immunity for state defamation laws as against the protections of the First Amendment. And I'm sure the court is familiar with the facts in New York Times versus Sullivan. There's no doubt that that Montgomery, Alabama, councilman was defamed. There's no doubt. The statements in the newspaper ad were false, and they impugned on his reputation. And the Supreme Court in its analysis said, well, that's all well and good, and we don't care because we have bigger fish to fry. We have a more important issue to consider, and that is the chilling effect on free speech. So therefore, notwithstanding the fact that they may have stated a claim or proven a case for defamation under the laws of Alabama or New York or wherever, the First Amendment is bigger, and it's more important. And so we're going to impose more burdens and a higher standard. It's exactly the kind of thing that has been going on in these cases, precisely the kind of thing, because the First Amendment is that important. The Supreme Court in McIntyre's case, and I'll give the court a cite because I don't think anybody cited it in their briefs. It's 514 U.S. 334, 1995 Supreme Court decision. In the context of anonymous speech, the Supreme Court said, anonymity is a shield from the tyranny of the majority. This is a big deal. The First Amendment right to speak anonymously is very important. I understand the rights of businesses not to be defamed, not to have their businesses disparaged. But there needs to be a balancing of the rights and the interests that are involved here. And if there is no balancing, if it's simply a matter of plaintiffs said so, then there is no protection for the First Amendment rights. We submit that the trial court in this case reached the right result for the right reason. The speech at issue was not commercial, and we ask the court to affirm its order. I suppose it turns out that Mr. Njemian, for whatever his name is, is a senior vice president of their competitor, and he's doing this sheerly out of competitive spunk. What happens then? How do we separate that out? Your Honor, the best thing I can suggest is that the courts need to prioritize, and it's no different than in the criminal justice system. Suppose you know the guy did it, but for whatever reason the confession is kicked out because he wasn't read his Miranda rights. You have to err on the side of constitutional protections. If that means that sometimes the bad guy is not going to get caught, then that's what it means. But it's important for the courts to understand and to apply and to continue to defend important constitutional rights. Very well. Thank you, counsel. Mr. Rosenberg, you have a little bit of time. Not a lot. Thank you, Your Honor. I just looked up the McIntyre v. Ohio case that my opposing counsel cited, and there the anonymous speech deals with opposing a school tax levy. I mean, that's exactly the kind of political speech that is entitled to more protection. I don't think it matters, though, whether there's commercial speech or not, because these statements are per se defamatory, and you lose your First Amendment right when you make that type of defamatory statement. There's no First Amendment right to defamatory speech. That's Szaplinski v. New Hampshire, which is cited in the brief. Lastly, my counsel said that there were 22 or 18 of the 40 posters were thrown out immediately by the court. That's because they were found to have a connection with a competing company. We don't know about the other 22. We know 18 of the 40 are, so we can assume that some of the other 22 are, in fact, related to a commercial entity. Thank you, Your Honor. Thank you, counsel. The case just argued will be submitted for decision. Before you leave the courtroom, Mr. Weber, would you fill out a form that the deputy clerk will give you for that additional cite, three copies here and a copy to your opposing counsel? Oh, I guess he's already read it, so. All right. Thank you.
judges: Beezer, O'scannlain, Paez